IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

<table>
<tr><td>STATE OF WASHINGTON,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>No. 74963-3-I</td></tr>
<tr><td>Respondent,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>DIVISION ONE</td></tr>
<tr><td>v.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>KENNETH D. SHARP,</td><td>)</td><td>UNPUBLISHED OPINION</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Appellant.</td><td>)</td><td>FILED: October 2, 2017</td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

BECKER, J. — The appellant may not challenge the amount of restitution for the first time on appeal. We affirm.

The charges against appellant Kenneth Sharp stem from actions he took while acting as attorney-in-fact for his elderly mother in 2010 and 2011. His mother had suffered a stroke and was living in an assisted living facility. Sharp, about 63 years old, transferred over $400,000 from his mother's bank account to his own account. He also fraudulently obtained a reverse mortgage on his mother's home.

Sharp pleaded guilty to seven counts of theft in the first degree and one count of mortgage fraud. The court sentenced Sharp to 43 months of confinement on January 22, 2015. Restitution was to be determined at a future restitution hearing. Sharp waived his presence at the restitution hearing.

At a scheduled restitution hearing on July 16, 2015, Sharp's attorney requested a continuance. He explained that he was considering asking to withdraw as Sharp's attorney because Sharp was upset with his representation. He said Sharp's wife told him that Sharp wanted to participate in the restitution hearing via Skype or some other method. The court granted a continuance.

The restitution order at issue was signed and entered on February 25, 2016. There are no court minutes in the record for that date. According to Sharp's attorney, the bailiff confirmed to his office that the order was presented and signed off the record.[1] The court ordered restitution of $231,578.90 to each of Sharp's two sisters and $10,808.82 to the State of Oregon. Sharp was represented by a new attorney. His attorney signed the restitution order and handwrote next to his signature: "The defense has no specific objections to raise; however, the defense does not join in the State's request for restitution."

Sharp appeals the amount of the restitution. He contends the State did not prove three money transfers totaling $16,500 that he allegedly made from his mother's bank account to his own. He also claims that the court erroneously failed to offset the restitution by two payments that he allegedly made to his mother's assisted living facility totaling $26,168.38. Therefore, he argues, $42,668.38 of the restitution order is not supported by credible evidence.

The issue is whether Sharp has preserved this error for appeal. Sharp acknowledges that he did not object to the amount of restitution before the trial court. He argues, however, that he may challenge the court's authority to impose

---

[1] Brief of Appellant at 10, n.5.

this contested amount of restitution for the first time on appeal because it was a legal error in the sentence.

For this proposition, he cites State v. Cosgaya-Alvarez, 172 Wn. App. 785, 291 P.3d 939, review denied, 177 Wn.2d 1017 (2013). In that case, the defendant committed murder. The trial court ordered the defendant to pay the victim's court-ordered child support as part of restitution. The defendant argued, for the first time on appeal, that the court did not have the statutory authority to order him to pay court-ordered child support as part of his restitution. Cosgaya-Alvarez, 172 Wn. App. at 790. This court held that the defendant may challenge the court's authority to impose restitution for court-ordered child support for the first time on appeal because it was an alleged legal error in the sentence. Cosgaya-Alvarez, 172 Wn. App. at 790.

In response to Sharp, the State argues that a defendant's agreement to pay restitution and failure to challenge the amount of restitution at the trial court waives his right to argue the sufficiency of the record on appeal. The State cites State v. Branch, 129 Wn.2d 635, 651, 919 P.2d 1228 (1996), and State v. Ryan, 78 Wn. App. 758, 763, 899 P.2d 825, review denied, 128 Wn.2d 1006 (1995). Branch challenged the amount of restitution for the first time on appeal because the amount was not supported by the record. Our Supreme Court held that Branch's failure to raise the issue at the trial court and his agreement to pay restitution waived his right to argue the sufficiency of the record on appeal. Branch, 129 Wn.2d at 651. Similarly, this court held that when Ryan did not

object to restitution ordered, the amount was deemed acknowledged. Ryan, 78 Wn. App. at 763.

In contrast to what occurred in Cosgaya-Alvarez, Sharp does not challenge the court's *authority* under statute or case law to impose any part of the restitution. He challenges the *amount* of restitution, arguing the amount is not supported by the record. This is a factual issue, not a legal issue. Therefore, this case is more like Branch and Ryan.

Sharp agreed to pay restitution as part of his plea agreement. His statement on plea of guilty, signed by Sharp and his attorney, states, "If this crime resulted in injury to any person or damages to or loss of property, the judge will order me to make restitution, unless extraordinary circumstances exist which make restitution inappropriate." The felony plea agreement, also signed by Sharp and his attorney, states: "RESTITUTION: Pursuant to RCW 9.94A.753, the defendant shall pay restitution in full to the victim(s) and agrees to pay restitution in full on charged and uncharged counts—exact amount to be determined." Because Sharp agreed to pay restitution and did not object to the amount of restitution before the trial court, he waived his right to argue the sufficiency of the record on appeal. Branch, 129 Wn.2d at 651.

Both parties cite unpublished Court of Appeals opinions to support their arguments. A recently amended court rule, GR 14.1, provides that "unpublished opinions of the Court of Appeals have no precedential value and are not binding on any court. However, unpublished opinions of the Court of Appeals filed on or after March 1, 2013, may be cited as nonbinding authorities, if identified as such

4

by the citing party, and may be accorded such persuasive value as the court deems appropriate." The same court rule also provides that "Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions." GR 14.1.

For briefs that will be most helpful to this court, parties should examine the published cases cited as authority in the unpublished cases they are citing and focus on those published cases. Because the unpublished opinions cited by the parties on this case are not necessary for a reasoned decision, we do not cite or discuss them.

Sharp has waived his argument that the amount of restitution is not supported by the record. We decline to review it.

Appellate costs will not be imposed against Sharp.

Affirmed.

Becker, J.

WE CONCUR:

Mann, J.                    Appelwick, J.